# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDIE J. MAINIERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-909 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Introduction

Plaintiff Edie J. Mainiero ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433 and 1381-1383(f)].

### II. Background

Plaintiff was born on August 25, 1955. (R. 392). After graduating from high school, she attended classes at the University of Pittsburgh for two years, studying business administration. (R. 40). She never finished her degree. *Id.* Her past relevant work includes work as a liquor store clerk and a liquor store assistant manager for the Pennsylvania Liquor Control Board. (R. 902).

Plaintiff filed applications for DIB and SSI on October 24, 2001, and December 27, 2001, respectively, alleging disability as of December 6, 2000. (R. 38, 115-119, 795). The claims were denied by the state agency on December 13, 2001. (R. 75-78). On January 3, 2002, Plaintiff filed a request for a hearing. (R. 79). Pursuant to this request, a hearing was held in Greensburg, Pennsylvania, on April 29, 2002, before Administrative Law Judge Raymond J. Zadzilko. (R. 32). Plaintiff, who was represented by counsel, appeared and testified at the hearing. (R. 39-66).

1

Morton Morris, an impartial vocational expert, also testified. (R. 66-69). At the conclusion of the hearing, Judge Zadzilko informed Plaintiff's counsel that a consultative psychological examination of Plaintiff would be necessary, since Plaintiff had exhibited a lack of understanding during the proceedings. (R. 69-70). Although Plaintiff was given a subsequent *physical* examination, the psychological examination discussed by Judge Zadzilko did not occur prior to the issuance of his decision. (R. 360-367, 782-784). On February 28, 2003, Judge Zadzilko issued a decision in which he determined that Plaintiff was not "disabled" within the meaning of the Act. He concluded that Plaintiff had engaged in substantial gainful activity between December 2000 and June 2001. (R. 29). Thus, the relevant period of time, for purposes of Plaintiff's DIB and SSI applications, postdated June 2001. Judge Zadzilko determined that Plaintiff was not disabled because she had the residual functional capacity to work as a building entry attendant, a hand tagger/labeler, a television monitor, a hand packer, an assembler, or a tester. (R. 30).

Unhappy with Judge Zadzilko's decision, Plaintiff filed a request for review with the Appeals Council on March 21, 2003. (R. 13). She also filed new applications for DIB and SSI during the spring of 2003. (R. 456-460, 760-763). The Appeals Council denied Plaintiff's request for review on September 17, 2003, thereby making Judge Zadzilko's decision the final decision of the Commissioner in Plaintiff's case. (R. 8-10). Plaintiff proceeded to commence an action in this Court pursuant to §§ 405(g) and 1383(c)(3), seeking review of Judge Zadzilko's decision. In a memorandum opinion and order dated March 31, 2005, this Court held that Judge Zadzilko's failure to assure that Plaintiff be given a consultative psychological examination after the hearing had constituted a failure to properly develop the record, and that the case needed to be remanded for further proceedings. (R. 775-784). In accordance with this Court's order, the Appeals Council vacated Judge Zadzilko's decision and remanded the case for further proceedings, including a new hearing. (R. 787). Meanwhile, Plaintiff's second applications for DIB and SSI continued to proceed through the administrative process. On May 11, 2005, Administrative Law Judge William B. Russell issued a decision in which he determined that Plaintiff had been "disabled" within the meaning of the Act since April 1, 2003. (R. 400-411). Specifically, Judge Russell concluded that Plaintiff's mental impairment met the criteria for

being categorized as an "affective disorder" within the meaning of Listing 12.04, which appears in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments").[1] (R. 409-410). Hence, Plaintiff was found to be *per se* disabled under the Act. Judge Russell noted that Plaintiff's mental condition had begun to deteriorate after Judge Zadzilko's decision, and that Judge

---

[1] "12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A. Medically documented persistence, either continuous or intermittent, of one of the following:
    1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions, or paranoid thinking; or
    2. Manic syndrome characterized by at least three of the following:
    a. Hyperactivity; or
    b. Pressure of speech; or
    c. Flight of ideas; or
    d. Inflated self-esteem; or
    e. Decreased need for sleep; or
    f. Easy distractability; or
    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
    h. Hallucinations, delusions or paranoid thinking; or
    3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
    B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
OR
    C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."
20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

3

Zadzilko's adverse determination had been a "significant source of stress" in Plaintiff's life. (R. 407). According to Judge Russell, this deterioration in Plaintiff's psychiatric condition explained why Plaintiff was disabled as of April 1, 2003, but not before. (R. 407-409).

Dr. John R. Vigna performed a consultative psychological examination of Plaintiff on December 15, 2005. (R. 877-898). Pursuant to the orders issued by this Court and the Appeals Council, a hearing was held in Pittsburgh, Pennsylvania, on January 25, 2006, before Administrative Law Judge William Kenworthy. (R. 899). Plaintiff, who was again represented by counsel, appeared and testified at the hearing. (R. 902-914). Frances Kinley ("Kinley"), an impartial vocational expert, was present for the entire hearing and testified before its conclusion. (R. 916-919). In a decision dated March 8, 2006, Judge Kenworthy determined that Plaintiff had not been "disabled" within the meaning of the Act at any time prior to April 1, 2003. (R. 382-394). Judge Kenworthy's decision became the final decision of the Commissioner in this case, since the Appeals Council opted not to review it.

On June 13, 2006, Plaintiff commenced this action against the Commissioner, seeking review of Judge Kenworthy's decision. Doc. No. 3. The parties have filed cross-motions for summary judgment, which are currently pending before the Court and are, consequently, the subject of this memorandum opinion. Doc. Nos. 7 & 9.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358,

4

360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, the Commissioner must do more than simply state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). An administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the

5

claimant can do his previous work; unless he shows that he cannot, he is
determined not to be disabled. If the claimant survives the fourth stage, the fifth,
and final, step requires the SSA to consider so-called "vocational factors" (the
claimant's age, education, and past work experience), and to determine whether
the claimant is capable of performing other jobs existing in significant numbers in
the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted). Hence, as a general matter, a claimant seeking benefits under the Act may establish the existence of a statutory disability by (1) introducing medical evidence that she is *per se* disabled as a result of an impairment appearing in the Listing of Impairments or (2) demonstrating that the functional limitations caused by her impairments effectively preclude her from returning to her past relevant work and from performing other jobs existing in significant numbers in the national economy. *Stunkard*, 849 F.2d at 59.

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 196 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**IV.** **Discussion**

Plaintiff argues that she should be awarded DIB and SSI for the period of time between

6

June 15, 2001, and March 31, 2003.[2] Doc. No. 10, p. 16. The Commissioner has already determined that Plaintiff became disabled on April 1, 2003. (R. 407-409). Therefore, the Court's inquiry is limited to the question of whether the Commissioner's decision that Plaintiff was not disabled prior to April 1, 2003, is supported by substantial evidence.

In his decision, Judge Kenworthy noted that Plaintiff had not engaged in substantial gainful activity during the period of time in question. (R. 388). Moving on to the second step of the sequential evaluation process, Judge Kenworthy found Plaintiff to have been suffering from cervical degenerative disc disease, torticollis and depression. *Id.* Plaintiff's degenerative disc disease and torticollis were found to be severe for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c). *Id.* Nevertheless, it was determined that, during the relevant period of time, her depression had been a non-severe impairment (i.e., an impairment which did not significantly limit her ability to do basic work activities). *Id.*; 20 C.F.R. §§ 404.1521, 416.921. Judge Kenworthy concluded that Plaintiff's impairments did not meet or medically equal an impairment appearing in the Listing of Impairments. (R. 388). In accordance with 20 C.F.R. §§ 404.1545 and 416.945, Judge Kenworthy made the following residual functional capacity assessment with respect to the period of time at issue:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform tasks at the sedentary exertional level, lifting no more than ten pounds occasionally, and avoiding tasks that require reaching, pushing, pulling, or use of the arms overhead. Furthermore, she would be limited to the performance of tasks that are of a simple and repetitive nature.

(R. 391). Given this assessment, it was determined that, between June 2001 and March 2003, Plaintiff could not have returned to her past relevant work as a liquor store clerk or an assistant manager. (R. 392). Nevertheless, Judge Kenworthy concluded that Plaintiff could have worked as a telephone operator, surveillance system monitor, gate guard or cashier. (R. 393). Kinley's

---

[2]Judge Kenworthy considered the period of time between December 6, 2000, and March 31, 2003. (R. 388-392). Nonetheless, Plaintiff concedes that her last day of work was June 14, 2001. Doc. No. 10, p. 15. She seeks a retroactive award of benefits for the period of time beginning on June 15, 2001, and ending on March 31, 2003. *Id.*

7

testimony established that these jobs existed in the national economy for purposes of the Act.³ (R. 917-918). Consequently, Plaintiff was not found to be "disabled" during the applicable period of time.⁴ (R. 394).

When Plaintiff sought review of Judge Zadzilko's original decision, this Court was careful to note that its decision to remand Plaintiff's case for further administrative proceedings did not mean that the Commissioner's ultimate determination was incorrect. (R. 784). The Court was concerned about the fact that Judge Zadzilko had apparently overlooked the need to have Plaintiff undergo a consultative psychological examination after having observed that such an examination would be necessary. (R. 782-784). The remand was necessitated by the Commissioner's failure to properly develop the record, and nothing in this Court's opinion indicated that Plaintiff was, in fact, statutorily disabled. Indeed, the Court held that "substantial evidence" supported Judge Zadzilko's decision to reject the opinion of Dr. Anton Munirji, who was one of Plaintiff's treating physicians. (R. 780-782). Dr. Munirji had opined, on December 3, 2001, that Plaintiff was "totally disabled" from engaging in "any type of gainful employment[.]" (R. 304). This Court is presently mindful, as it was before, that "it is not the Court's function to substitute its judgment for that of the Commissioner." (R. 784). Thus, the Court views the administrative record, as it must, through the prism of the congressional mandate that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

At the hearing, Plaintiff testified that, prior to December 6, 2000, she had been in excellent physical and mental health. (R. 905). Nevertheless, on that day, she was injured at work. While unloading a "gallon jug," she felt a "sharp pain" going down her arm and fingers. (R. 904). At that point, she was unable to lift objects. *Id.* She initially had to seek treatment

---

³For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

⁴An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

8

from her employer's workers' compensation doctor, who she claims to have cleared her to return to work prematurely. *Id.* Plaintiff apparently aggravated her injuries upon her return to work. *Id.* In her testimony, Plaintiff attributed her mental problems to stress resulting from the physical difficulties that she experienced after the onset of her injury. (R. 905-906).

The administrative record includes a transcript of deposition testimony given by James Hanawalt ("Hanawalt") related to proceedings before the Pennsylvania Bureau of Workers' Compensation. (R. 840-859). At all relevant times, Hanawalt was the Chief of Employee Services for the Pennsylvania Liquor Control Board, which was Plaintiff's employer. (R. 843-844). Hanawalt testified that June 14, 2001, was the last day on which Plaintiff had worked for the Liquor Control Board. (R. 846). Plaintiff calls the Court's attention to this testimony in support of her assertion that June 15, 2001, "serves as an adequate onset date." Doc. No. 10, pp. 14-15.

Hanawalt's testimony is consistent with Judge Zadzilko's determination that Plaintiff ceased to engage in substantial gainful activity in June 2001. (R. 29, 846). It does not follow, however, that Plaintiff was *disabled* at that time. The mere fact that a person stops working does not mean that he or she meets the criteria for DIB and SSI established by the Act. A determination that Plaintiff was no longer working as of June 15, 2001, entitles her only to proceed past the first step of the sequential evaluation process. While the date on which she *stopped* working may constitute evidence of her *inability* to work, it is certainly not dispositive of the issue.

Plaintiff's argument is problematic in that it assumes that Plaintiff's *disability* began at the same time as her *mental illness*. Doc. No. 10, p. 14. It must be remembered that there is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). To qualify for benefits under the Act, a claimant must establish an "*inability* to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A)(emphasis added). The twelve-month durational requirement applies not only to the predicate *impairment*,

9

but to the resulting *inability* (or statutory *disability*) as well. *Barnhart v. Walton*, 535 U.S. 212, 214-223 (2002). Thus, it is clear that an *impairment* which ultimately results in a *disability* is not necessarily disabling at its inception.

Like many individuals seeking benefits under the Act, Plaintiff has both exertional and nonexertional impairments. In determining whether work exists in the national economy for such a claimant, the Commissioner must account for *all* of the claimant's limitations. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982)("The fact that work exists in the national economy for a person who *only* has Burnam's exertional impairments, or for a person who *only* has his nonexertional impairments, does not mean that work exists in the national economy for a person who suffers from *both* types of impairments simultaneously.")(emphasis in original). In this case, however, the analysis is slightly different because the question is not *whether* Plaintiff became statutorily disabled, but *when* she became statutorily disabled. In order to address this question, the Court must consider *how* Plaintiff established the existence of her statutory disability.

Judge Russell determined that Plaintiff had become statutorily disabled on April 1, 2003, because her mental condition had deteriorated to the point at which she met the criteria for *per se* disability under Listing 12.04. (R. 407-410). The standard for establishing the existence of *per se* disability is demanding, since "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall *functional* impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)(emphasis added). The issue is one of *medical* equivalence. "For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original). Thus, the *per se* disability analysis is not based on the combined impact of all impairments suffered by a claimant, but rather on the isolated impact of those which are *medically* equivalent to the particular listing at issue. Indeed, Plaintiff appears to base her argument for an earlier onset date solely on her listing-level *mental* impairment. Doc. No. 10, p. 16 (arguing that she should receive DIB and SSI retroactive to June 15, 2001, "[b]ecause the ALJ

failed to properly evaluate the duration of her *mental* health disability")(emphasis added).

In his opinion of May 11, 2005, Judge Russell determined that Plaintiff's psychiatric condition had deteriorated rapidly after Judge Zadzilko's decision denying her initial applications on February 28, 2003. (R. 407-408). Judge Russell explained that Judge Zadzilko's decision had been a "significant source of stress" in Plaintiff's life, thereby causing an exacerbation of her mental problems. (R. 407). The declination of Plaintiff's mental condition was deemed to have been drastic. In determining that Plaintiff's mental condition had deteriorated to listing-level severity, Judge Russell placed significant reliance on the opinion of Dr. Michelle Santilli, who performed a psychiatric evaluation of Plaintiff on July 15, 2003. (R. 718-727). Dr. Santilli diagnosed Plaintiff as suffering from a major depressive disorder, which was both recurrent and severe with psychotic features. (R. 723). Plaintiff's physical impairments included a herniated disc, a ruptured disc and torticollis. *Id.* Dr. Santilli opined that Plaintiff's nonexertional impairments resulted in a slight limitation in her ability to understand and remember detailed instructions and marked limitations in her ability to carry out both simple and detailed instructions. (R. 726). Because Judge Russell decided that Plaintiff was *per se* disabled at the third step of the sequential evaluation process pursuant to the criteria appearing in Listing 12.04, any impairments which were unrelated to that criteria played no role in the disability determination.

When Plaintiff's case returned to the Commissioner on remand from this Court, Dr. Vigna performed a psychological evaluation of Plaintiff. (R. 877-898). He diagnosed Plaintiff as suffering from a personality disorder. (R. 886). In his view, Plaintiff was slightly limited in her ability to understand and remember short and simple instructions, moderately limited in her ability to carry out short and simple instructions, moderately limited in her ability to make judgments on simple work-related decisions, markedly limited in her ability to understand and remember short and simple instructions, and extremely limited in her ability to carry out detailed instructions. (R. 898). Dr. Vigna also opined that Plaintiff experienced moderate limitations in her ability to interact appropriately with supervisors and coworkers and to respond appropriately to changes in a routine work setting, a marked limitation in her ability to interact appropriately with members of the general public, and an extreme limitation in her ability to respond

11

appropriately to work pressures in a usual work setting. *Id.* Dr. Vigna's assessment of Plaintiff's psychological condition indicated that Plaintiff's mental problems had exacerbated even further since she had been examined by Dr. Santilli. Dr. Santilli had found no limitations in Plaintiff's ability to interact appropriately with the public, supervisors or coworkers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. 726).

At her hearing before Judge Kenworthy, Plaintiff testified that she had not seen a psychologist until she began psychotherapy with Dr. Paul Bernstein. (R. 909). In a letter to Judge Kenworthy dated December 1, 2005, Dr. Bernstein stated that Plaintiff's psychotherapy had begun on November 17, 2003. (R. 869). Plaintiff continued to attend psychotherapy sessions with Dr. Bernstein until September 30, 2004, at which point she apparently discontinued the sessions because of travel-related difficulties. *Id.* Although Plaintiff had obtained a prescription for Paxil from Dr. Joop Offerman prior to initiating treatment with Dr. Bernstein, she had generally been seeking medical attention only for her physical impairments. She testified that she had not taken any anti-depressants or anti-anxiety medications (aside from Paxil) until the commencement of her psychotherapy sessions with Dr. Bernstein. (R. 910). In determining that Plaintiff was not *disabled* by her psychological impairments prior to April 1, 2003, Judge Kenworthy noted that Plaintiff had not sought professional help for her depression prior to November 17, 2003.[5] (R. 391).

Neither Dr. Santilli nor Dr. Vigna rendered a specific opinion as to *when* Plaintiff's mental impairments became disabling. The crux of Plaintiff's argument at this stage is that the opinions of Dr. Santilli and Dr. Vigna as to her mental status at the time of the respective examinations (which were conducted on July 15, 2003, and December 15, 2005), when coupled with evidence that her last day of work was June 14, 2001, leads to the conclusion that she was

---

[5]At her hearing before Judge Zadzilko, Plaintiff expressed a desire to seek treatment for depression. (R. 59-61). She also indicated that she had suffered panic attacks. (R. 57). Nevertheless, such testimony alone does not establish that her nonexertional impairments satisfied the criteria under Listing 12.04 at that time. In determining that Plaintiff's "disability" did not begin until April 1, 2003, Judge Russell relied on the report of Dr. Santilli, who had examined Plaintiff on July 15, 2003. (R. 406-410). Since the record indicates that Plaintiff did not seek treatment for depression until seven months *after* April 1, 2003, the Court sees no reason to set aside Judge Kenworthy's determination that Plaintiff's mental impairments were not disabling *before* that date.

statutorily disabled as of June 15, 2001. Doc. No. 10, pp. 9-16. As noted earlier, however, this line of reasoning is incompatible with the Act's standard for determining the existence of a disability, which requires both an *inability* to work and an *impairment* which is the cause of such inability. *Walton*, 535 U.S. at 214-223. While Plaintiff's impairment may have predated April 1, 2003, there is no evidence that her *inability* to work existed prior to that date. Since the record is totally devoid of evidence that Plaintiff's nonexertional impairments were of listing-level severity prior to April 1, 2003, the Court has no basis to disturb the Commissioner's determination that her *disability* did not exist before that date.

It is, of course, true that the inquiry does not end at the third step of the process. Since Judge Kenworthy determined that Plaintiff's mental impairments did not meet the criteria for Listing 12.04 before April 1, 2003, he had to proceed to determine Plaintiff's residual functional capacity during the period of time in question. He concluded that, during the relevant period of time, she had been capable of performing sedentary work which required her to occasionally lift ten pounds, which entailed only the performance of simple and repetitive tasks, and which never involved reaching, pushing, pulling or the overhead use of arms. (R. 391). All of these limitations were adequately conveyed to Kinley in Judge Kenworthy's hypothetical question. (R. 917). Thus, Kinley's testimony constituted "substantial evidence" that, during the relevant period of time, jobs existed in the national economy which were consistent with Plaintiff's vocational and residual functional capacities. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

Plaintiff does not specifically argue that Judge Kenworthy erred in determining her residual functional capacity, opting to base her argument almost exclusively on the mental impairment deemed by Judge Russell to have been of listing-level severity as of April 1, 2003. Doc. No. 10, pp. 10-16. Moreover, when Plaintiff commenced her initial action against the Commissioner, this Court did not take issue with Judge Zadzilko's credibility determinations. (R. 780-782). The Court notes that Judge Kenworthy incorporated Judge Zadzilko's summary of the medical evidence into his own opinion by reference. (R. 388). Judge Kenworthy also observed that this Court had determined that Judge Zadzilko did not err in rejecting the opinion of Dr. Munirji, who had opined that Plaintiff was statutorily disabled as of December 3, 2001.

(R. 303-305, 388). Hence, the current state of the record provides no basis for concluding that Plaintiff was disabled as of June 15, 2001, or as of any other date prior to April 1, 2003.

In her brief, Plaintiff herself notes that mental illness is usually "progressive," and that no physician of record can say with any degree of certainty when her impairments rendered her unable to work. Doc. No. 10, p. 14. This observation, within the context of this case, constitutes a fatal concession. Indeed, it hurts Plaintiff's argument more than it helps it. The Commissioner has determined that Plaintiff's mental impairments had *progressed* to a listing-level degree of severity as of April 1, 2003, but that it had not reached this threshold before that date. Perhaps the imprecise nature of medical science is such that no agency administered by human beings can precisely identify the point in time at which Plaintiff's impairment resulted in an *inability* to engage in substantial gainful activity. Be that as it may, the law requires that such a point in time be identified, lest the carefully drafted language enacted by Congress be rendered meaningless in the face of everyday medical uncertainties. It is the Commissioner who has been charged with the duty to draw a line between those who are disabled and those who are simply impaired, and the Court has no basis for setting his determination aside in this case.

It is undeniable that Plaintiff has a number of impairments. That is why she has been found to be disabled as of April 1, 2003. This Court is aware of the challenges which she has faced in seeking gainful employment throughout the past seven and a half years. Given the current state of the record, however, the Court must defer to the Commissioner's determination that Plaintiff was not disabled prior to April 1, 2003, and that she was capable of engaging in substantial gainful activity prior to that date.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff. An appropriate order follows.

                                                            McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDIE J. MAINIERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-909 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 6th day of March, 2008, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Commissioner's Motion for Summary Judgment (*Document No. 7*) is **GRANTED** and that Plaintiff's Motion for Summary Judgment (*Document No. 9*) is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Lee Karl, Esq.
    Email: lee.karl@usdoj.gov

    John G. Burt, Esq.
    Email: jburt@nidhog.com